USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __8/29/19_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------

JAMES DANIEL WEBB,

                                        Petitioner,

                    -v-

CITIGROUP GLOBAL MARKETS, INC.,

                                        Respondent.

-------------------------------------------------------------------------

CITIGROUP GLOBAL MARKETS, INC., and
CITIGROUP GLOBAL MARKETS HOLDING, INC.,

                                        Cross-Petitioners,

                    -v-

JAMES DANIEL WEBB,

                                        Cross-Respondent.

-------------------------------------------------------------------------

19 Civ. 535 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

        Petitioner James Daniel Webb asks the Court, pursuant to Section 10 of the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 10, to vacate an arbitration award ("Award") against him.

The Award reflects loans that Webb, a former financial advisor, borrowed from his securities-

industry employer, respondent Citigroup Global Markets, Inc. ("CGMI"), via two promissory

notes, but did not repay.  CGMI opposes the petition.  CGMI further, along with its affiliate

Citigroup Global Markets Holding, Inc. ("CGMHI"), cross-petitions the Court to (1) modify the

Award to reflect CGMHI as a proper recipient of damages, or alternatively, remand to the

arbitrators for clarification on this point; (2) confirm the portion of the Award that denies

Webb's counterclaims; and (3) enter judgment pursuant to the FAA.  *See* 9 U.S.C. §§ 9, 11.  For

the following reasons, the Court denies Webb's petition to vacate the Award, grants CGMI's and CGMHI's cross-petition to modify the Award, and confirms the Award as modified.

## I.      Background

### A.      Factual Background[1]

#### 1.      Webb's Employment with CGMI

Webb worked in the securities industry for decades. *See* Counterclaim ¶ 3. On June 15, 2012, CGMI hired Webb as a financial advisor. Cross-Pet. ¶¶ 9–10. At CGMI, Webb specialized in equity syndicate, which involves initial public offerings, secondary offerings, and related products. *Id.* ¶ 9. As part of retention packages offered by CGMI, Webb executed the two promissory notes at issue here. *See* Statement of Claim, Ex. A at 12–15 ("First Note"); Statement of Claim, Ex. C at 23–26 ("Second Note").

#### 2.      The First Note

On June 15, 2012, his first day of CGMI employment, Webb executed the First Note. *See* First Note at 12. The First Note memorialized a loan from a CGMI affiliate, CGMHI, to Webb for $800,000. *Id.* Under the terms of the First Note, Webb agreed to repay CGMHI's loan in nine equal installments. *Id.* He also agreed to pay interest on the principal amount that would accrue at a rate of 1.07% per year, from the date of the first disbursement until the loan's full repayment. *Id.* The First Note included an acceleration clause, which stated that all amounts outstanding under the Note would immediately become due if Webb's employment terminated "voluntarily or involuntarily for any reason or no reason whatsoever." *Id.* at 13.

---

[1] The facts are drawn from Webb's Amended Verified Petition to Vacate Arbitration Award, Dkt. 10 ("Pet."), respondents' Cross-Petition to Correct or Modify, or in the Alternative, Remand for Clarification, and Confirm, Dkt. 22 ("Cross-Pet."), the exhibits attached to these documents, and the various declarations filed by the parties, *see* Dkt. 4 ("Webb Mem."), Ex. A ("Award"), Ex. B ("Statement of Claim"), Ex. C ("Answer"), Ex. C ("Counterclaim"), Ex. F ("Webb Motion"); Dkt. 24 ("Thompson Decl."), Ex. C ("Hearing Tr.").

The same day, Webb entered into a retention agreement with CGMI in connection with the First Note.  *See* Statement of Claim, Ex. B ("First Retention Agreement") at 17–21.  Under that agreement, CGMI and another affiliate, Citibank, would pay Webb's installment payments for the First Note each year, as long as Webb remained an employee in good standing with CGMI.  *See id.* at 17.  The First Retention Agreement required that Webb pay all federal and state income taxes, payroll taxes, and other employment taxes associated with the installment payments.  *Id.*

### 3.     The Second Note

On August 2, 2013, Webb executed the Second Note, pursuant to which CGMHI loaned Webb an additional $574,293.  *See* Second Note at 23.  Webb agreed to repay this principal amount in eight equal installments.  *Id.*  Interest accrued on the second loan from the date of disbursement to the date of full repayment—this time at a rate of 1.63% per year.  *Id.*  The Second Note included an acceleration clause identical to that in the First Note, requiring full repayment of all amounts outstanding if Webb's employment with CGMI ended for any reason. *Id.* at 24.

The same day, Webb entered into another retention agreement with CGMI.  *See* Statement of Claim, Ex. D ("Second Retention Agreement") at 28–32.  As with the First Retention Agreement, under the second agreement, CGMI and Citibank agreed to pay Webb's installment payments for the Second Note if he remained employed with CGMI.  *Id.* at 28. Again, Webb agreed to pay all federal and state income taxes, payroll taxes, and other employment taxes generated by payments made pursuant to the Second Retention Agreement. *Id.*

3

### 4.     Webb's Resignation from CGMI

On August 26, 2016, Webb resigned from CGMI.  Cross-Pet. ¶ 15.  Webb alleges that he was forced to resign because the equity syndicate business proved less profitable than CGMI had forecast, and because CGMI did not open a satellite office near Webb's home as it had promised. *See* Crossclaim ¶ 11.  When Webb resigned, he immediately owed $444,444.44 on the First Note's principal and $430,719.74 on the Second Note's principal.  Statement of Claim ¶ 24. Interest had also accrued on each note, and CGMI had made the tax payments discussed in the Retention Agreements when Webb failed to do so.  *Id.*  Webb had not made payments on the Notes.  Cross-Pet. ¶ 16.

### B.     The Arbitration

### 1.     Scheduling the Arbitration

On November 14, 2016, CGMI filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") for the balances owed on the Notes, the interest that had accrued on the Notes, the tax liability from the Retention Agreements, and attorneys' fees and other costs.  *See* Statement of Claim ¶¶ 27–48; *see also* Cross-Pet. ¶ 17.  "Citigroup Global Markets, Inc." was listed as the sole claimant in the arbitration's caption.  Pet. ¶ 13; *see also* Award at 2.  The arbitration was pursuant to FINRA rules because CGMI was a "Member Firm" and Webb was an "Associated Person" under those rules.  Pet. ¶¶ 1–3.  FINRA appointed Chairperson Donald Theodore Ryce, Jr., Arbitrator Michael S. Davidoff, and Arbitrator William E. Schneider to serve as the arbitral panel.  Pet. ¶ 16; Cross-Pet. ¶ 19.

In March 2017, Webb filed a Statement of Answer and Counterclaim against CGMI.  In his Answer, Webb responded to CGMI's and CGMHI's claim for liability under the Notes and Retention Agreements by stating "that the agreement speaks for itself."  Answer ¶¶ 6–14, 16–22. Webb denied any liability related to the Notes or Retention Agreements.  *See id.* ¶¶ 15, 23–24,

26, 28–33, 35–40, 42–48.  Relatedly, Webb asserted a host of affirmative defenses, including failure to state a cause of action, contract defenses, and equitable defenses.  *See id.* 5–7.  In his Counterclaim, Webb alleged that CGMI breached its employment contract with him.  *See* Counterclaim ¶¶ 17–21.  And he claimed that, because of CGMI's inaccurate forecasts of its equity syndicate business and its unfulfilled promise of opening a branch office near Webb's home, CGMI committed fraud, *id.* ¶¶ 22–28, fraudulent misrepresentation, *id.* ¶¶ 29–53, and negligent misrepresentation, *id.* ¶¶ 36–43.  Webb also alleged that he had notified CGMI of phantom accounts that its customers had opened, but that CGMI failed to fully address the accounts.  *Id.* ¶¶ 12–16.  Because of Webb's warning and the subsequent alleged adverse employment action against him, Webb claimed both a violation of and retaliation under the Florida Private Sector Whistleblower Act.  *See id.* ¶¶ 49–60.  Finally, as a result of CGMI's alleged failures to abide by its agreements, provide Webb with truthful information, supervise suspicious activity in the company, and observe trade and industry practices, Webb claimed that CGMI breached its fiduciary duty to him.  *Id.* ¶¶ 44–48.

On August 9, 2017, the panel convened the initial pre-hearing conference.  Cross-Pet. ¶ 20.  Webb's counsel stated there that he was "double and triple booked" until 2019; the panel accordingly did not schedule the arbitral hearing until 16 months later: December 3–7, 2018.  *Id.* On January 18, 2018, the panel held a second conference to determine if the arbitration could be scheduled for an earlier date.  *Id.* ¶ 23.  Webb's counsel stated that he was unavailable on any earlier date, so the panel maintained the December 3–7, 2018 hearing dates.  *Id.*

On September 13, 2018, Webb's counsel withdrew.  Pet. ¶ 18.  Two months later, on November 13, 2018, Webb filed a *pro se* motion to adjourn the December 3–7, 2018 hearing for 60–90 days to find witnesses, gather documents, and hire new counsel.  Webb Motion at 5.

5

CGMI objected that Webb's counsel's schedule constraints had been responsible for the hearing being scheduled well after the initial conference, the hearing was by then several weeks away, and CGMI's witnesses had made plans to attend. Cross-Pet. ¶ 26. The panel denied Webb's request. Webb Motion at 4. As to that decision, the panel stated only that: "Having duly considered the arguments of the parties, the Panel denies the Motion." *Id.*

### 2. The Arbitration Hearing

On December 3, 2018, the arbitration hearing began, with Webb representing himself *pro se*. Cross-Pet. ¶ 28. At the outset of the hearing, CGMI orally moved to amend the case's caption to add CGMHI as a claimant, because CGMHI was the "actual holder" and issuer of Webb's First and Second Notes. Hearing Tr. 21; *see also* Cross-Pet. ¶ 29. Webb asked a question in response to the motion: "The sole purpose of that entity is to hold my notes?" Hearing Tr. 22. CGMI responded in the affirmative. *Id.* Webb then consented to the motion, stating that he "did not have an objection to that," and the panel granted the motion. *Id.* at 23.

CGMI and CGMHI then presented their case and called witnesses. *See* Cross-Pet. ¶ 30. Webb then began to present his case. *See id.* ¶ 31. During his opening statement, Webb stated that he had filed his November 13, 2018 motion to adjourn because he "spent two weeks in the hospital" and was "not as prepared as [he] would have liked to be." *Id.* ¶ 31. Webb also stated that he had left documents he needed at home. *Id.* The panel agreed to adjourn early. *Id.*

On December 4, 2018, the hearing resumed. *Id.* ¶ 32. Webb told the panel that, the day before, he had located some documents, but he still needed to print them. *Id.* Webb then asked again for an adjournment of 30, 60, or 90 days to print the documents and to find witnesses. *Id.* In response, CGMI and CGMHI offered to provide Webb printed copies of all the documents. *Id.* ¶ 33. Webb thereupon withdrew his request as to the documents. *Id.* As to the witnesses, the panel informed Webb that he could request subpoenas if needed. *Id.* The panel then gave Webb

an additional 90 minutes to review the documents.  *Id.* ¶ 34.  Webb stated that he did not need

additional time and proceeded to testify and present evidence.  *Id.*  During his presentation, the

panel gave Webb an additional 30 minutes to organize his documents.  *Id.*  After 30 minutes had

passed, Webb asked for more time, which the panel granted.  *Id.* ¶ 35.  Webb then testified

further.  *Id.*  After cross-examination, re-direct, and re-cross of Webb, the panel asked Webb if

he had anything further that he would like to present; Webb responded in the negative.  *Id.* ¶ 37.

Both parties made closing statements.  *Id.* ¶ 39.  After closing statements, the panel gave both

parties the opportunity to assert any objections or issues; neither did.  Hearing Tr. 621.

On December 6, 2018, the arbitration hearing adjourned.  Cross-Pet. ¶ 40.

### 3.     The Arbitration Award

On December 18, 2018, the panel issued the Award in favor of CGMI.  *Id.* ¶ 41; *see also*

Award at 3–5.  The panel found Webb liable for (1) $444,444.44 in compensatory damages and

$10,801.87 in pre-judgment interest related to the First Note; (2) 1.07% in post-judgment interest

on the First Note's $444,444.44 in damages, from the date of the Award until the date the Award

is paid; (3) $430,719.74 in compensatory damages and $15,941.67 in pre-judgment interest

related to the Second Note; (4) 1.63% in post-judgment interest on the Second Note's

$430,719.74 in damages, from the date of the Award until the Award is paid; and (5) $27,912.23

in compensatory damages for the taxes CGMI had paid for Webb on its Retention Agreement

payments.  Award at 3–4.  The panel also denied Webb's counterclaims.  *Id.* at 4.  Finally, the

panel ordered that each party pay forum fees, denied both parties' requests for attorney's fees,

and denied Webb's request for punitive damages.  *Id.* at 4–5.

The caption of the Award identifies CGMI, but not CGMHI, as the claimant.  *Id.* at 1.

C.      **This Action**

On January 17, 2019, Webb filed the instant petition to vacate the Award.  Dkt. 1.  The same day, Webb filed a memorandum of law in support.  Dkt. 4.  On January 30, 2019, Webb filed an amended petition to vacate the Award.  Dkt. 10.

On April 5, 2019, CGMI and CGMHI together filed a cross-petition (1) to correct or modify the portion of the Award awarding damages to CGMI, so as to reflect that CGMHI is the proper recipient of such damages, or if the Court found the Award ambiguous, to remand to the arbitrators for clarification; (2) to confirm the portion of the Award that denies Webb's counterclaims; and (3) to enter judgment pursuant to the FAA.  Dkt. 22.  The same day, CGMI and CGMHI filed a memorandum of law in opposition to Webb's petition and in support of their cross-petition.  Dkt. 23.

On May 28, 2019, Webb filed a reply memorandum in opposition to the cross-petition and in further support of his petition.  Dkt. 29 ("Webb Reply").  On June 18, 2019, CGMI and CGMHI filed a reply.  Dkt. 32.

## II.      **Discussion**

A.      **Applicable Legal Standards**

The FAA provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  Section 9 provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . .

9 U.S.C. § 9.

8

### 1.    Vacatur

In seeking to void the panel's ruling, Webb faces an imposing standard of review.[2]

Judicial review of arbitral awards is "severely limited, so as not to frustrate the twin goals of

arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."

*Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir.

2012) (internal quotation marks and citations omitted).   A reviewing court owes "strong

deference" to "arbitral awards and the arbitral process," *Porzig v. Dresdner, Kleinwort, Benson,*

*N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007), and a party seeking to vacate an arbitral award

"must clear a high hurdle," *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671

(2010).

"It is not enough for petitioners to show that the panel committed an error—or even a

serious error."   *Id.*   Rather, under the FAA, "[i]f there is 'even a barely colorable justification for

the outcome reached,' the court must confirm the arbitration award."   *Willemijn*

*Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting

*Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 704 (2d Cir. 1978)).   Courts have

authority to vacate arbitral awards only in narrow, enumerated circumstances, such as "where

there was evident partiality . . . in the arbitrators," 9 U.S.C. § 10(a)(2); "where the arbitrators

were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown,"

*id.* § 10(a)(3); or "where the arbitrators exceeded their powers, or so imperfectly executed them

that a mutual, final, and definite award upon the subject matter submitted was not made,"

*id.* § 10(a)(4).

---

[2] There is, however, special solicitude due to *pro se* litigants, requiring liberal construction of
their pleadings, motion papers, and briefs.   *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir.
2010).

Second Circuit cases have held that an arbitral award may also be vacated if it "exhibits a 'manifest disregard' of the law." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 662 (2010). But the manifest disregard standard, rather than substantially broadening the grounds for vacatur, largely operates "as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA." *Id.* at 94. Vacatur of an arbitral award for manifest disregard of the law "is a doctrine of last resort," reserved for "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Manifest disregard of the law "means more than error or misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986). It applies where: (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators," (2) "the law was in fact improperly applied, leading to an erroneous outcome," and (3) "the arbitrator . . . kn[ew] of its existence, and its applicability to the problem before him." *Duferco Int'l Steel Trading*, 333 F.3d at 390.

### 2.    Modification

Section 11 of the FAA allows a district court with proper venue to modify or correct an award if "there was an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a); *see also Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000) (venue is proper for §§ 9–11 under FAA or under general venue statute). The district court may also modify the award "to effect the intent thereof and promote justice between the parties" if "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c). Although a modification cannot be made for "substantive dispute[s] that lay[] at the heart of the arbitration," § 11 does allow for

modification "to correct typographical, clerical, and other obvious errors." *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, No. 96 Civ. 6441 (PKL), 2000 WL 60200, at *7 (S.D.N.Y. Jan. 25, 2000) (citation omitted).

### 3.   Confirmation

The confirmation of an arbitration award generally is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)) (internal quotation marks omitted).  In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 12.  But "[a]rbitration awards are not self-enforcing"; "they must be given force and effect by being converted to judicial orders by courts." *Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co*, 462 F.3d at 104) (internal quotation mark omitted).

"A petition to confirm an arbitral award is 'treated as akin to a motion for summary judgment.'" *STX Pan Ocean Shipping Co. v. Progress Bulk Carriers Ltd.*, No. 12 Civ. 5388 (RJS), 2013 WL 1385017, at *2 (S.D.N.Y. Mar. 14, 2013) (quoting *D.H. Blair & Co.*, 462 F.3d at 109).  To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to

particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### B. Webb's Challenges

In seeking to vacate the Award, Webb makes several challenges. He claims that (1) arbitrator Schneider failed to disclose material information; (2) the arbitrators committed misconduct in refusing to postpone the hearing; and (3) CGMI could not properly pursue the arbitration because CGMHI, not CGMI, was Webb's sole counterparty to the Notes. *See* Pet. ¶¶ 23–37. The Court addresses each argument in turn.

#### 1. Arbitrator Schneider's Disclosures

Webb contends that arbitrator Schneider failed to disclose material information, namely that he had written a book titled *Lead Right for Your Company's Type*. Pet. ¶¶ 25–26. This non-disclosure, he argues, violated FINRA Rule 13408, which requires that arbitrators disclose any interest, relationship, or circumstances that "might preclude an arbitrator from rendering an objective and impartial determination in the proceeding." Webb Mem., Ex. I ("FINRA Rules") at 7. On this basis, Webb seeks vacatur of the Award, arguing that there was an appearance of "evident partiality," 9 U.S.C. § 10(a)(2), and that the panel exceeded its powers in granting the Award, *id.* § 10(a)(4), insofar as arbitrator Schneider was not appointed in accordance with FINRA's rules. Pet. ¶ 24. In his reply, Webb withdrew this argument, having apparently

12

recognized, based on CGMI's showing in its opposition, that arbitrator Schneider did not, in fact, write the book in question.  Webb Reply ¶ 17.

Even had Webb not abandoned this claim, it clearly did not supply a basis for vacatur. First, Webb's factual premise is wrong.  Arbitrator Schneider did not publish the book *Lead Right for Your Company's Type*—another William E. Schneider did.  The author William E. Schneider has a Ph.D. in clinical psychology from St. Louis University and has practiced as a consulting psychologist since 1974.  Thompson Decl., Ex. P at 1–2.  The arbitrator by the same name has an AA/BA from the University of South Florida and is a retiree with deep experience in the financial sector.  *Id.*, Ex. Q at 1.  As a result, arbitrator Schneider had nothing to disclose.

Second, even if arbitrator Schneider had failed to disclose such a writing, that lapse would not establish evident partiality in violation of § 10(a)(2).  *See* 9 U.S.C. § 10(a)(2).  To vacate for evident partiality under FAA § 10(a)(2), "a reasonable person would *have* to conclude that an arbitrator was partial to one party to the arbitration."  *Scandinavian Reins. Co.*, 668 F.3d at 72 (emphasis added) (quoting *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)).  The party asserting evident partiality bears the burden of proving such partiality.  *Id.*  Although proof of actual bias is not required, a party cannot make a showing of evident partiality "based simply on speculation."  *Id.* (quoting *United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 147 (2d Cir. 1998)).  Webb has not met that burden.  The hypothetical failure by arbitrator Schneider here to disclose his authorship of a book would not lead a reasonable person to the conclusion that he was partial to one side of this controversy.  The book has nothing whatsoever to do with the parties or issues in this case.  Its focus is on corporate culture and encouraging "leadership practices [that] fit the customer promise and company type."  *Lead Right for Your Company's Type*, Amazon,

https://www.amazon.com/Lead-Right-Your-Companys-Type/dp/1536663182 (last visited August 20, 2019). This arbitration is not about such matters, but principally about a financial advisor's alleged non-payment on a promissory note.

Third, any such lapse would not show that arbitrator Schneider had been appointed in violation of FINRA rules or exceeded his power under 9 U.S.C. § 10(a)(4). To be sure, the Second Circuit has suggested that, under § 10(a)(4), a court may vacate an award if an arbitrator is not appointed "in accordance with agreed-upon procedures." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005). But the Circuit has also "consistently accorded [§ 10(a)(4)] 'the narrowest of readings.'" *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 50–51 (2d Cir. 2015) (quoting *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012)). And while FINRA Rule 13408 requires that arbitrators disclose any interests, relationships, or circumstances that could prevent an impartial determination, *see* FINRA Rules at 7, the fact of an arbitrator's authorship of the book *Lead Right for Your Company's Type* would not fit into any of these categories. The non-disclosure here was manifestly immaterial. Accordingly, even if arbitrator Schneider had authored that book, he was not appointed in violation of any FINRA rule and did not act in excess of his power.

### 2.    The Panel's Denial of Webb's Motion to Adjourn

Webb next claims misconduct by the panel for denying his November 13, 2018 motion to postpone the hearing in the face of good cause, justifying vacatur under FAA § 10(a)(3). Pet. ¶ 32. He relatedly faults the panel for not providing a "clear and reasonable justification" for that decision. *Id.* ¶ 34. He further argues that the panel violated FINRA Rule 13208(b), which states that at an arbitration proceeding, "all parties shall have the right to be represented by an attorney at law," Webb Reply ¶ 13 & n.4, warranting vacatur under § 10(a)(3). Webb Reply ¶ 16.

None of these arguments justifies such relief.

To begin, Webb is incorrect that, for an award to stand, an arbitral panel must articulate a clear and reasonable justification for its decisions, including as to the arbitration schedule. Quite the contrary, the Second Circuit has held that "arbitrators are not required to provide an explanation for their decision." *Willemijn Houdstermaatschappi, BV*, 103 F.3d at 12. A reviewing court instead examines the "conduct and conclusions" of the arbitrators, *id.*, to see "if a ground for the arbitrator[s'] decision can be inferred from the facts of the case," *id.* at 13 (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972)). The absence of a stated justification for the denial of a motion does not require vacatur, where a viable justification can be inferred the circumstances.

Here, the arbitrators had a reasonable basis for denying Webb's bid for a postponement, weeks before the start of the arbitration. The decision whether to grant or deny an adjournment falls within a panel's "broad discretion." *Storey v. Searle Blatt Ltd.*, 685 F. Supp. 80, 82 (S.D.N.Y. 1988). "If there exists 'a reasonable basis for the arbitrators' considered decision not to grant postponement,' a court should be reluctant to interfere with the award." *Bisnoff v. King*, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001) (quoting *Ottawa Office Integration, Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 220 (S.D.N.Y. 2001)). A panel needs only "a barely colorable justification" to decide not to grant an adjournment. *Alexander Julian, Inc. v. Mimco, Inc.*, 29 F. App'x 700, 703 (2d Cir. 2002).[3]

---

[3] Webb also analyzes this claim under FINRA's Arbitrator's Guide. *See* Webb Reply ¶¶ 14–15. Although that guide provides factors for arbitrators to consider in assessing a postponement request, it does not supply the test, on judicial review, for whether vacatur is merited. The guide itself so acknowledges the reasonableness standard governing FAA review: "[C]ertain statutes permit parties to move to vacate arbitration awards by alleging that arbitrators exceeded their authority by refusing to grant a reasonable postponement request." Webb. Reply, Ex. A at 46.

Here, the interest in preventing further delay of the long-scheduled hearing reasonably justified denying a postponement. This interest was particularly substantial insofar as the hearing, at Webb's request, had been scheduled for long (16 months) after the initial conference date. And Webb had waited two months after his attorney's withdrawal to seek postponement, making the request just three weeks before the hearing was to start. Under these circumstances, a postponement—which would need to accommodate the schedules of Webb, Webb's as-yet-unretained successor counsel, respondents' counsel, the three arbitrators, and witnesses—had potential to force a significant delay past December 2018.

The interest in avoiding such an unjustified delay was credited by a court in this District in denying a similar bid for vacatur in *Storey v. Searle Blatt Ltd.*, *supra*. The petitioner there had requested, and the panel had granted, two requests for adjournment for the unavailability of a key witness. *See Storey*, 685 F. Supp at 81. When petitioner then asked for a third adjournment— because the same witness could not appear due to a death in the family—the panel denied the request. *See id.* The district court held that the panel had a reasonable basis to deny this request, in that it had twice accommodated petitioner, the matter had been pending for more than a year, and respondents' witnesses had traveled to be present for the arbitration. *See id.* at 82. Similarly, here, the panel had accommodated Webb, setting an elongated pre-hearing schedule at his side's request and adhering to that decision on later review. The December 3, 2018 hearing date was more than two years after CGMI had filed the petition, substantially exceeding FINRA's goal to have evidentiary hearings start within nine months after the initial conference. *See* Cross-Pet. ¶¶ 20, 23; *see also* Thompson Decl., Ex. S at 2 ("FINRA Arbitrator's Guide") ("Expeditious resolution of disputes is one of the goals of arbitration. Therefore, the commencement of evidentiary hearings within nine months or less after the IPHC is the goal.").

And CGMI had alerted the panel that its witnesses had already made plans to attend the hearing. Cross-Pet. ¶ 26. These interests supplied an amply reasonable basis for the panel to maintain the hearing date.

*Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997), on which Webb relies, Webb. Mem. ¶ 51, is inapposite. There, a key witness for the defense was unavailable because his wife had been diagnosed with cancer. 120 F.3d at 17–18. The panel opted not to postpone the hearing, viewing the witness's testimony as cumulative. 120 F.3d at 18. On appeal, the Second Circuit held this decision unreasonable because, on review of the witness's affidavit, his testimony was not cumulative. *Id.* at 20. No such circumstance exists here. The panel had no opportunity, in fact, to determine whether the witnesses or documents that Webb stated he wished to present were cumulative or insignificant, because Webb never identified the witnesses or documents that he would have offered had the hearing been adjourned. *See* Cross-Pet. ¶ 32.

Also contrary to Webb's claim, the denial did not deprive him of a fair hearing in breach of FAA § 10(a)(3). Under that provision, a court may vacate an award "only if 'fundamental fairness is violated.'" *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) ("NFL") (quoting *Tempo Shain*, 120 F.3d at 20) (analyzing § 10(a)(3) in context of refusing to hear evidence); *see also Bisnoff*, 154 F. Supp. at 637 (analyzing § 10(a)(3) in context of denying request for postponement). Fundamental fairness may be violated "if the arbitrators fail to 'give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *Bisnoff*, 154 F. Supp. at 637 (quoting *Tempo Shain*, 120 F.3d at 20). That standard was met here. The panel here gave both sides a full opportunity to present their cases. After CGMI rested, Webb made his opening statement and sought a brief adjournment on account of health issues and a lack of preparation.

17

Cross-Pet. ¶¶ 30–31.  In response, the panel adjourned for the day.  *Id.* ¶ 31.  After the hearing

resumed, the panel three times offered, and twice granted, Webb additional time to prepare.  *See*

*id.* ¶ 34.  Webb also presented both testimony and documents in support of his case.  *See id.*

¶¶ 34–36.  After Webb finished, the panel asked if there was anything else he would like to

present, to which Webb responded in the negative.  *Id.* ¶ 37.  And, after closing statements, the

panel gave the parties the opportunity to raise any objections or issues, which they did not.

Hearing Tr. 621.  The panel therefore gave Webb time to present his case and a full opportunity

to augment his proof.  The hearing was fundamentally fair.

That Webb was *pro se* does not change the outcome.  The Second Circuit has rejected

§ 10(a)(3) claims by *pro se* plaintiffs when a panel's refusal to postpone a hearing did not

deprive them of a fundamentally fair hearing.  *See, e.g.*, *Rai v. Barclays Capital Inc.*, 456 Fed.

App'x 8, 9 (2d Cir. 2011), *cert. denied*, 566 U.S. 979 (2012) (affirming confirmation of award

when arbitrators refused to postpone hearing to allow *pro se* plaintiff's witness to testify).

Several factors made Webb's hearing particularly fair.  First, Webb had notice of the hearing

date for more than a year, and after his counsel withdrew, he had more than two months to retain

a new attorney.  Second, the panel gave Webb "ample opportunity as a *pro se* litigant" to present

his case.  *Santos v. Gen. Elec. Co.*, No. 10 Civ. 6948 (JSR) (MHD), 2011 WL 5563544, at *18

(S.D.N.Y. Sept. 28, 2011), *report and recommendation adopted*, No. 10 Civ. 6948 (JSR), 2011

WL 5563536 (S.D.N.Y. Nov. 15, 2011) (denying *pro se* plaintiff's § 10(a)(3) claim that

arbitrator committed misconduct by refusing to postpone hearing to accommodate plaintiff's

disability because arbitrator was "even-handed," gave plaintiff "ample opportunity" to correct

her mistakes, and "offered [plaintiff] a nearly unending series of chances to cure" her discovery

failures).  The panel here granted Webb additional time when needed, *see* Cross-Pet. ¶¶ 34–36;

allowed him to use CGMI's documents when he forgot his own, *see id.* ¶ 33; informed him that he could use the panel's subpoena power to ensure the presence of witnesses, *id.*; and asked him, at the close of his case and again after closing arguments, if he had anything else he wanted to present, Hearing Tr. 269, 621. The panel was, in short, appropriately solicitous of Webb's status as a *pro se* litigant.

Even if a violation of FINRA's rules could rise to the level of a § 10(a)(3) violation, that was not the case here. There was no violation of these rules. While Rule 13208(b) permits a party to be represented by an attorney, nothing in the rules obliged the panel to agree to an eleventh-hour adjournment for a party to seek an attorney. Here, even accepting Webb's claim that he had been hospitalized for two weeks after receiving notice of his attorney's withdrawal, *see* Cross-Pet. ¶ 31, Webb had a month and a half to find an attorney before asking the panel to adjourn the hearing, and an additional three weeks thereafter. A party's right under Rule 13208(b) "to be represented by an attorney" does not guarantee that every participant will ultimately have an attorney. *Cf.* FINRA Rule 12300 (supplying separate rules for filings of *pro se* plaintiffs); *How to Find an Attorney*, FINRA, http://www.finra.org/arbitration-and-mediation/how-find-attorney (last visited August 22, 2019) (stating that if party cannot afford attorney, some law school clinics (not FINRA) *may* be able to supply one). And it is well settled that "[t]he FAA does not require that parties be represented by counsel during arbitration proceedings." *United Media Holdings, NV v. Forbes Media, LLC*, No. 16 Civ. 5926 (PKC), 2017 WL 9473164, at *7 (S.D.N.Y. Aug. 9, 2017) (citing *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 262 (S.D.N.Y. 2000), *aff'd*, 34 F. App'x 406 (2d Cir. 2002)).

The denial of Webb's motion for adjournment thus did not violate the FAA or otherwise justify vacatur.

### 3. CGMI's Status as a Non-Party to the Notes

Finally, Webb contends that the Award should be vacated on the ground that CGMI lacked standing to bring the arbitration. The loan, he notes, was from CGMHI, which held the promissory notes, whereas the arbitration was brought by his former employer CGMI, an affiliate of CGMHI. *See* Pet. ¶¶ 36–37. Webb argues that the Award was therefore rendered in manifest disregard of the law, requiring vacatur. *Id.* ¶ 37.

Webb is wrong. As the Second Circuit has emphasized, the standard for finding a manifest disregard of the law is high—it is "a doctrine of last resort," to be used only in "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco Int'l Steel Trading*, 333 F.3d at 389. No egregious impropriety occurred here. At the beginning of the arbitration hearing, CGMI orally moved to amend the caption of the arbitration to add CGMHI as a second claimant because CGMHI was "the actual holder of the note." Hearing Tr. 21. Webb consented, and the panel granted the motion. *Id.* at 23. This cured any conceivable issue with respect to CGMI's standing.[4] The ensuing omission of CGMHI from the caption and from the Award departed from the earlier ruling adding CGMHI as a claimant and thus appears to have been a clear oversight. *See infra*, Part II.C.1.

As to this point, Webb claims he did not actually consent to the motion to add CGMHI because he was *pro se* and did not understand the consequences of his consent. Webb Reply ¶ 9. The hearing transcript paints a different picture. After CGMI made its motion, Webb spoke up, stating: "I have a question. The sole purpose of that entity is to hold my note?" Hearing Tr. 22.

---

[4] In any event, CGMI and CGMHI both appear to have been proper parties given the nature of the controversy—CGMI as Webb's employer and respondent with respect to his employment-law counterclaims, and CGMHI as the holder of the Notes.

When CGMI responded affirmatively, Webb stated, "I do not have an objection to that." *Id.* at 23. Webb was thus actively engaged in the hearing, posed a question about the subject at hand, and understood CGMI's applications. There is no basis to treat his ensuing consent as void.

### C.     Citigroup's Claims

CGMI and CGMHI cross-petition the Court to modify the Award to add CGMHI as a claimant. *See* Cross-Pet. ¶¶ 55–56. Alternatively, CGMI and CGMHI move to remand to the arbitral panel for clarification. *Id.* ¶ 57. They also move to confirm the remainder of the Award that denies Webb's counterclaims. *Id.* ¶ 59.

### 1.     Modification

The Court grants the motion to modify the Award. Under § 11, a district court has the power to modify an arbitral award under limited circumstances without need to remand to the panel. *See* 9 U.S.C. § 11. Although § 11 states that the "court in and for the district wherein the award was made" may modify an award, the Supreme Court has held that venue for FAA cases is proper both where the award is made and in any district that is proper under the general venue statute. *Cortez Byrd Chips, Inc.*, 529 U.S. at 195 (applying same analysis for §§ 9–10). Under the general venue statute, venue is proper in this District because respondent CGMI has its principal place of business here. 28 U.S.C. § 1391(b)(1); Pet. ¶ 8. Therefore, the Court has the power to modify the Award provided the proposed modification is consistent with the scope of authority given by § 11.

The Court so finds. Under § 11, the omission of CGMHI as a claimant is both "a mistake in the description of [a] person . . . referred to in the award," 9 U.S.C. § 11(a), and an instance of an award "imperfect in matter of form not affecting the merits of the controversy," 9 U.S.C. § 11(c). Significantly, CGMI successfully moved to add CGMHI as a claimant at the start of the arbitral hearing. As a result, the panel's subsequent failure to conform the caption of the case

and the Award to this ruling appears to be a clerical oversight.  *See Companhia de Navegacao Maritima Netumar*, 2000 WL 60200, at *7 (district court can correct for clerical and obvious errors); *see also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994) (district court had authority to modify award amount for typographical error); *Josephthal & Co. v. Cruttenden Roth Inc.*, 177 F. Supp. 2d 232, 238–39 (S.D.N.Y. 2001) (although district court's ability to modify an award is limited, it can do so when there is an "evident material . . . mistake").  Notably, the modification sought does not implicate any substantive dispute.  The panel held that Webb was liable for the Notes, and that determination is not implicated by the modification.  *See Fellus v. Sterne, Agee, & Leach, Inc.*, 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011) (quoting *Companhia de Navegacao Maritima Netumar*, 2000 WL 60200, at *6) (courts cannot modify awards when modification is "substantive dispute at the heart of the arbitration").  The Court orders that the Award be modified to add CGMHI as a Claimant.

## 2. Confirmation

With that modification, the Court confirms the Award as modified.  On the very limited review that is appropriate, the Court finds that summary judgment is warranted, as CGMI and CGMHI have shown that there is no material issue of fact in dispute for both their claims and Webb's counterclaims.

As to CGMI's and CGMHI's claims, there is no material issue because the Notes themselves establish Webb's liability.  Webb executed both Notes, which stated that the full amount Webb owed would become due if his employment with CGMI was terminated "voluntarily or involuntarily for any reason or no reason whatsoever."  First Note at 13; Second Note at 24.  When Webb resigned from CGMI, he immediately owed $444,444.44 on the First Note and $430,719.74 on the Second Note.  Statement of Claim ¶ 24.  He also owed interest on

both Notes and taxes that CGMI paid on his behalf.  *Id.*  No evidence submitted at the hearing supplied a basis to void the Notes, nor did Webb present any defense or evidence that he in fact paid any of the money he owed.  As a result, the Court confirms the portion of the modified Award that addresses CGMI's and CGMHI's claims.

As to Webb's counterclaims, the panel, "[a]fter considering the pleadings, testimony and evidence presented at the hearing, and the post-hearing submissions," denied Webb's counterclaims.  Award at 3–4.  At the hearing, CGMI presented evidence that contested each of Webb's claims.  *See* Hearing Tr. 38–47 (outlining evidence CGMI expected to present at hearing).  The limited review conducted by this Court reveals that there is at least a "barely colorable justification for the outcome reached."  *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 13 (citation omitted).

## CONCLUSION

For the reasons stated herein, the Court denies Webb's petition to vacate the Award, and grants CGMI's and CGMHI's cross-petition to modify and confirm the Award.  The Award, as modified, is confirmed.  The Clerk of the Court is directed to terminate the motions at Dkt. 3 and Dkt. 21 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge


Dated: August 29, 2019
       New York, New York